HIN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SETON MEDICAL CENTER** <br> 1900 Sullivan Avenue <br> Daly City, CA 94015 | ) <br> ) <br> ) <br> ) |
| **MONTEREY PARK HOSPITAL** <br> 900 S. Atlantic Blvd <br> Monterey Park, CA 91754 | ) <br> ) <br> ) <br> ) |
| **GARFIELD MEDICAL CENTER** <br> 525 N Garfield Avenue <br> Monterey Park, CA 91754 | ) <br> ) <br> ) <br> ) |
| **SAN GABRIEL VALLEY MEDICAL CENTER** <br> 438 West Las Tunas Drive <br> San Gabriel, CA 91778-1507 | ) <br> ) <br> ) <br> ) <br> ) |
| **ANAHEIM REGIONAL MEDICAL CENTER** <br> 1111 West LA Palma Avenue <br> Anaheim, CA 92801 | ) <br> ) <br> ) <br> ) <br> ) |
| **WHITTIER HOSPITAL MEDICAL CENTER** <br> 15151 Janine Drive <br> Whittier, CA 90605 | ) <br> ) <br> ) <br> ) <br> ) |
| **GREATER EL MONTE COMMUNITY HOSPITAL** <br> 1701 Santa Anita Avenue <br> South El Monte, CA 91733 | ) <br> ) <br> ) <br> ) <br> ) |
| **PARKVIEW COMMUNITY HOSPITAL** <br> 3865 Jackson Street <br> Riverside, CA 92503 | ) <br> ) <br> ) <br> ) |
| **ALHAMBRA HOSPITAL MEDICAL CENTER** <br> 100 South Raymond <br> Alhambra, CA 91801 | ) <br> ) <br> ) <br> ) <br> ) |

COMPLAINT FOR JUDICIAL REVIEW OF ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

|  |  |
|---|---|
| Plaintiffs, | ) |
|  | ) Case No. |
| v. | ) |
|  | ) |
| **ROBERT F. KENNEDY, JR.,** In his Capacity as Secretary of the U.S. Department of Health and Human Services 200 Independence Avenue, S.W. Washington, D.C. 20201 | ) ) ) ) ) ) |
|  | ) |
| Defendant. | ) |
|  | ) |

## COMPLAINT FOR JUDICIAL REVIEW OF ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

Seton Medical Center et al., (hereinafter "Plaintiffs" or "Hospitals") bring this action against defendant Robert F. Kennedy Jr., in his official capacity as the Secretary (the "Secretary") of the Department of Health and Human Services ("HHS"). As confirmed by two recent district court decisions, the Centers for Medicare & Medicaid Services ("CMS") was obligated to calculate a certain reimbursement proxy for the Hospitals in a specified way. Yet CMS has not done so, despite having the relevant information. Two final agency determinations wrongly permitted this non-compliance. These arbitrary and capricious final determinations must be set aside, and each of the Hospitals' Medicare reimbursement proxies must be recalculated in accordance with the pending decision of the Supreme Court of the United States ("Supreme Court").

This is a civil action brought to obtain judicial review of a decision rendered on April 3, 2025 by the Provider Reimbursement Review Board ("PRRB" or "Board"), acting as a component of HHS, which denied the request for expedited judicial review (EJR) made by the Plaintiffs (EJR request narrative, list of exhibits, exhibits, and denial letter attached hereto as **Exhibits** "**B**", "**C**", "**D**", and "**E**", respectively).

## INTRODUCTION

1. This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§1395 *et seq.* (the Medicare Act), the Administrative Procedure Act, 5 U.S.C. §§551 *et seq.* (the APA), and other authorities. The Medicare Fraction (SSI) - Statutory & Systemic Errors issue in this action refers to how certain inpatient hospital days should be addressed for purposes of calculating the Hospitals' Medicare fractions of their Medicare disproportionate share hospital ("DSH") payments for fiscal years ("FYs") 1988-2013.

2. The final determinations that underlie Plaintiffs' request for EJR were rendered on July 26, 2024 and August 13, 2024, by CMS (attached hereto as **Exhibit** "**A**"). Following the

3

publication date of the latter final decision, the Hospitals filed their appeals based on these decisions, which were assigned various PRRB Case Numbers. The denial of these appeals as shown in Exhibit E was made following a jurisdictional challenge issued by the Plaintiffs' designated Medicare Administrative Contractor ("MAC") Noridian Healthcare Solutions, LLC - JE.

## JURISDICTION AND VENUE

3. This Court has jurisdiction under 42 U.S.C. §1395oo(f) (appeal of final Medicare program agency decision) and 28 U.S.C. §1331 (federal question) and §1361 (mandamus).

4. This civil action is filed within sixty (60) days of the date the Hospitals are deemed to have received the decision of the PRRB denying their request for EJR and dismissing their appeals.

5. Venue lies in this judicial district pursuant to 42 U.S.C. §1395oo(f)(1) and 28 U.S.C. § 1391(e)(1).

## PARTIES

6. The Hospitals, their Medicare Provider Numbers and fiscal years appealed are listed below:

| Hospital | Provider # | Fiscal Years |
|---|---|---|
| SETON MEDICAL CENTER | 05-0289 | 1989-2013 |
| MONTEREY PARK HOSPITAL | 05-0736 | 2011-2013 |
| GARFIELD MEDICAL CENTER | 05-0737 | 2005-2013 |
| SAN GABRIEL VALLEY MEDICAL CENTER | 05-0132 | 1988-2013 |
| ANAHEIM REGIONAL MEDICAL CENTER | 05-0226 | 1988-2013 |
| WHITTIER HOSPITAL MEDICAL CENTER | 05-0735 | 2005-2013 |
| GREATER EL MONTE COMMUNITY HOSPITAL | 05-0738 | 2005-2013 |
| PARKVIEW COMMUNITY HOSPITAL | 05-0102 | 1988-2013 |

| ALHAMBRA HOSPITAL MEDICAL CENTER | 05-0281 | 1988-1991,1993-2013 |

At all relevant times, the Hospitals had Medicare provider agreements and were eligible to participate in the Medicare program.

7. Defendant, Robert F. Kennedy Jr., Secretary of HHS, 200 Independence Avenue, S.W., Washington D.C. 20201, is the federal officer responsible for the administration of the Medicare program. Defendant Kennedy Jr. is sued in his official capacity.

## GENERAL BACKGROUND OF THE MEDICARE PROGRAM

8. The Medicare Statute establishes a system of health insurance for the aged, disabled, and individuals with end-stage renal disease. 42 U.S.C. §1395c. The Medicare program is federally funded and administered by the Secretary through CMS (formerly the Health Care Financing Administration ("HCFA")) and its contractors. 42 U.S.C. §1395kk(a); 42 Fed. Reg. 13,262 (Mar. 9, 1977).

9. CMS implements the Medicare program, in part, through rulemaking. *See* 42 C.F.R. §401.108. In addition to the substantive rules published by the Secretary in the Code of Federal Regulations and the Rulings, CMS publishes other, putative interpretive rules implementing the Medicare program, which are compiled in CMS manuals. The Secretary also issues other subregulatory documents relating to the Medicare program, which generally do not have the force and effect of law.

10. The Medicare program has five parts: A, B, C, D, and E. Part C of the Medicare program provides for coverage and payment for, among others, inpatient hospital services on a fee-for-service basis. 42 U.S.C. §§ 1395w-22. Part A services are furnished to Medicare beneficiaries by "providers of services," including hospitals, which have entered into written provider agreements with the Secretary, pursuant to 42 U.S.C. §1395cc, to furnish hospital services

to Medicare beneficiaries. The appeals at issue in this action involve only Part A of the Medicare program.

11. CMS pays providers participating in Part A of the Medicare program for covered services rendered to Medicare beneficiaries through MACs. *See* 42 U.S.C. § 1395kk-1(a). Each Medicare-participating hospital is assigned to a MAC. 42 U.S.C. § 1395kk-1(a)(3)(B). The amount of the Medicare Part A payment to a hospital for services furnished to Medicare beneficiaries is determined by its MAC based on instructions from CMS. *See* 42 C.F.R. § 405.1803.

### THE MEDICARE HOSPITAL INPATIENT PROSPECTIVE PAYMENT SYSTEM

12. Effective with cost reporting years beginning on or after October 1, 1983, Congress adopted the Hospital Inpatient Prospective Payment System ("IPPS") to reimburse hospitals, including the Hospitals, for inpatient hospital operating costs. *See* 42 U.S.C. § 1395ww(d). Under IPPS, Medicare payments for hospital operating costs are not based directly on the costs actually incurred by the hospitals. Rather, they are based on predetermined, nationally applicable rates based on the diagnosis of the patient determined at the time of discharge from the inpatient stay, subject to certain payment adjustments. *See id.* One of these adjustments is the Medicare "disproportionate share hospital" or "DSH" payment. *See* 42 U.S.C. §1395ww(d)(5)(F).

### THE MEDICARE DSH ADJUSTMENT

13. Hospitals that treat a disproportionately large number of low-income patients are entitled by statute to a Disproportionate Share Hospital (DSH) adjustment, in addition to standard Medicare payments. 42 U.S.C. §1395ww(d)(5)(F).

14. The DSH program was enacted by Congress in the Consolidated Omnibus Budget Reconciliation Act of 1985 and took effect beginning with discharges on or after May 1, 1986. Pub. L. No. 99-272, § 9105, 100 Stat. 158-60 (Apr. 7, 1986).

15. Congress enacted the DSH adjustment in recognition of the relatively higher costs associated with providing services to low-income patients. These higher costs have been found to result from the generally poorer health of these patients. The DSH adjustment provides additional Medicare reimbursement to hospitals for the increased cost of providing services to their low-income patients.

16. With respect to the cost year at issue, there were two methods of determining qualification for a DSH adjustment: the more common "proxy method" (42 U.S.C. §1395ww(d)(5)(F)(i)(I)) and the less common "Pickle method" (42 U.S.C. §1395ww(d)(5)(F)(i)(II)). The Hospitals' DSH calculations at issue were made using the proxy method, under which entitlement to a DSH adjustment, as well as the amount of the DSH payment, is based on the hospital's "disproportionate patient percentage" or "DPP." 42 U.S.C. §1395ww(d)(5)(F)(v) and (vi).

17. The DPP is the sum of two fractions, which are designed to capture the number of low-income patients a hospital serves on an inpatient basis by counting the number of days that low-income patients receive inpatient services in a given fiscal year ("inpatient days"). 42 U.S.C. §1395ww(d)(5)(F)(vi). Thus, the two fractions serve as a "proxy" to determine low-income patients, rather than having CMS count the actual number of those patients.

18. The first fraction, referred to as the "Medicare Fraction," accounts for inpatients who are current Medicare Part A recipients and also entitled to Supplemental Security Income

(SSI) benefits, a federal low-income supplement. The Medicare Fraction is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under part A of this subchapter and were entitled to supplementary security income benefits (excluding any State supplementation) under subchapter XVI of this chapter, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were entitled to benefits under Part A of this subchapter[.]

42 U.S.C. §1395ww(d)(5)(F)(vi)(I). The Medicare Fraction, therefore, is the percentage of a hospital's Medicare Part A-entitled inpatients who were also entitled to SSI benefits at the time that they were receiving inpatient services at the hospital. The Medicare Fraction is at issue in this case.

19. The second fraction, referred to as the "Medicaid Fraction," is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under title XIX, but who were not entitled to benefits under part A of this subchapter, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. §1395ww(d)(5)(F)(vi)(II).

20. The Medicaid Fraction, therefore, is intended to account for hospital inpatients "who were not entitled to benefits under [Medicare] [P]art A," but who were "eligible for medical assistance" under the Medicaid State plan at the time that they were receiving inpatient services at the hospital.

21. The Secretary's inclusion in the Hospitals' Medicare Fractions' *denominators* of days when the patients are eligible for Medicare Part C (hereinafter "Part C days") and exclusion

from the Hospitals' Medicare Fractions' *numerators* of days associated with individuals who were entitled to SSI but who were not assigned payment status codes CO1, MO1 or MO2 (hereinafter "SSI non-paid days") for fiscal years 1988-2013 is at the heart of this action.

## LITIGATION AND REGULATION REGARDING PART C DAYS

22. The fiscal year (FY) 2005 IPPS final rule, which was determined to be procedurally invalid by the United States Court of Appeals for the D.C. Circuit in 2014, required the inclusion of Part C days in the Medicare Fraction. *See Allina Health Servs. v. Sebelius*, 46 F.3d 1102 (D.C. Cir. 2014) (Allina I). While this litigation was pending, the Secretary re-proposed its policy on Part C days and finalized its policy, giving it prospective effect, effective for discharges on or after October 31, 2013, in the FY 2014 IPPS final rule. *See* 78 Fed. Reg. 50,496, 50,620 (Aug. 19, 2013) (the "2013 Rule"). Notwithstanding the ruling in Allina I, the Secretary continued to direct its MAC to place Part C days in the Medicare Fraction for discharges prior to October 31, 2013. Plaintiff hospitals in *Azar v. Allina Health Services*, 139 S. Ct. 1804 (June 3, 2019) (Allina II), challenged published Medicare Fractions calculated with Part C days included in their denominators for FY 2012. The Supreme Court held that CMS was required to engage in notice-and-comment rulemaking before assuming an "avowedly gap-filling policy" of including Part C patient days in the Medicare fraction for purposes of calculating the DPP.

23. The Supreme Court was presented with the issue of interpreting the DSH statue's text with regard to the meaning of "entitled" in *Becerra v. Empire Health Foundation, for Valley Hospital Medical Center*, 597 U.S. 424, 435 (June 24, 2022). In its decision, the Court held that, with respect to non-pay days (i.e., exhausted days and Medicare Secondary Payer (MSP) days) "being 'entitled' to Medicare benefits . . . means—in the [DSH] fraction descriptions, as throughout the statute—meeting the basic statutory criteria." The Court concluded that the "[t]ext,

context, and structure all support calculating the Medicare fraction HHS's way. In that fraction, individuals 'entitled to [Medicare Part A] benefits' are all those qualifying for the program." *Empire*, 597 U.S. at 445. CMS did not adopt this interpretation of "entitled" regarding SSI benefits, however; thus, it continues to count a patient as "entitled" to SSI benefits only if a patient received an SSI cash payment for the month of his or her hospital stay. 75 Fed. Reg. 50,042, 50,280-281 (Aug. 16, 2010).

24. The most recent regulatory issuance on the matter of Part C days occurred is CMS's final rule, CMS-1739-F, following the Supreme Court's ruling in *Allina*, on June 9, 2023. This final rule retroactively treats Part C enrollees as "entitled to Part A" for cost reporting periods starting before October 1, 2013, essentially retrospectively adopting its FY 2014 IPPS final rule regarding the treatment of Part C days while circumventing the requisite notice-and-comment rulemaking under *Allina*. Under this rule, a hospital's DPP will be calculated by including Part C days in the Medicare fraction, as CMS considers Part C enrollees to be "entitled to benefits under part A." *See* 88 Fed. Reg. 37,772, 37,776 (June 9, 2023) (Exhibit A).

25. On June 10, 2024, certiorari was granted by the Supreme Court for *Advocate Christ Medical Center v. Becerra*, in which the United States Court of Appeals for the District of Columbia Circuit upheld the Secretary's interpretation of "entitled to [SSI]". The petitioners, *Advocate Christ Medical Center et. al.*, have claimed that because the phrase "entitled … to benefits" appears twice in the same sentence of the Medicare Act, it should mean the same thing for both Medicare part A and SSI, and thus the petitioners' interpretation regarding the inclusion of SSI eligible days should be adopted by CMS. *Advocate Christ Medical Center, et al. v. Becerra,* No. 22-5214 (U.S. 2023), Writ of Certiorari to the United States Court of Appeals For The District

Of Columbia Circuit. The case has been fully briefed, the Court heard the oral argument on November 5, 2024, and a decision is pending.

## THE RELEVANT MEDICARE APPEALS PROCESS

26. At the close of its fiscal year, a provider must submit a cost report to the MAC showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare. 42 C.F.R. §413.20. Under the Medicare program, each hospital's MAC is required to analyze and audit the hospital's annually submitted Medicare cost report and issue a Medicare Notice of Amount of Program Reimbursement (NPR), which informs the hospital of the final determination of its total Medicare reimbursement for the hospital's fiscal year. 42 C.F.R. § 405.1803. In addition to including costs on its cost report, a hospital is also required to make a claim, or alternatively self-disallow, for any adjustment to its basic IPPS payment adjustment, such as the DSH adjustment. 42 C.F.R. § 413.24(j).

27. If a hospital is dissatisfied with its MAC's final determination (or any revised final determination) of the hospital's total Medicare program reimbursement for a fiscal year, as reflected in the NPR, and the hospital satisfies the amount in controversy requirements, the hospital has a right to obtain a hearing before the Board by filing an appeal within 180 days of receiving its NPR (or any revised NPR). 42 U.S.C. §1395oo(a); 42 C.F.R. § 405.1835(a). In addition to having the authority to make substantive decisions concerning Medicare reimbursement appeals, the Board is authorized to decide questions relating to its jurisdiction and procedure. *See* 42 U.S.C. §1395oo. Further, the Board is required to "affirm, modify, or reverse . . . ***and*** to make any other revisions on matters covered by such cost report[.]" *See* 42 U.S.C. § 1395oo(d) (emphasis added). That is, the Board cannot avoid making necessary revisions on matters properly before it.

28.     The decision of the Board on substantive or jurisdictional issues constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the Board's decision. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§ 405.1875, 405.1877.  The Secretary has delegated its authority under the statute to review Board decisions to the CMS Administrator. *See* 42 C.F.R. §§ 405.1875, 405.1877.  Thus, the Secretary's final administrative decision for purposes of judicial review is either the decision of the Board or the decision of the CMS Administrator after reviewing the Board's decision. *See* 42 C.F.R. § 405.1877(a)(2).

29.     A hospital may obtain judicial review by filing suit within 60 days of receipt of the Secretary's final administrative decision in the United States District Court for the judicial district in which the hospital is located or in the United States District Court for the District of Columbia. 42 U.S.C. §1395oo(f)(1). The Secretary is the proper defendant in such an action. *See* 42 C.F.R. § 405.1877(a)(2). Under 42 U.S.C. §1395oo(f)(2), interest is to be awarded in favor of the prevailing party in an action brought under 42 U.S.C. §1395oo(f). Under 42 U.S.C. § 1395g(d), CMS is required to pay interest on underpayments to Medicare providers, if the underpayment is not paid within thirty days of a "final determination."

30.     Judicial relief is also available under the equitable remedy of mandamus where a hospital has a clear right to the relief sought and the Secretary has a defined and non-discretionary duty to honor that right. *Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807, 813 (D.C. Cir. 2001); *Lutheran Med. Ctr. v. Thompson*, 520 F. Supp. 2d 414, 419 (E.D.N.Y. 2007).

31.     Jurisdiction is also available under 28 U.S.C. § 1331 where the agency renders a final determination and there is no administrative appeal available for that determination. *Am. Chiropractic Ass'n v. Leavitt*, 431 F.3d 812, 816 (D.C. Cir. 2005).

COMPLAINT FOR JUDICIAL REVIEW OF ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

## APPLICABILITY OF THE APA TO MEDICARE APPEALS

32. Under 42 U.S.C. §1395oo(f)(1), an action brought for judicial review of final agency action involving PRRB appeals "shall be tried pursuant to the applicable provisions under chapter 7 of title 5" of the U.S. Code, which contains the Administrative Procedure Act (APA). Under the APA, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. §706(2)(A). Further, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . unsupported by substantial evidence in a case . . . reviewed on the record of an agency hearing provided by statute[.]" 5 U.S.C. §706(2)(E).

## SPECIFIC FACTS PERTAINING TO THIS CASE

33. Between January 22, 2025, and February 5, 2025, Quality Reimbursement Services (hereinafter "QRS") filed 26 group appeals on behalf of the Hospitals as their appointed representative before the Board. These appeals were submitted with the CMS transmittals 12747 and 12785, attached as Exhibit A to this Complaint, as their final determinations to form the basis of each appeal.

34. On March 13, 2025, QRS filed a request for EJR for all 26 group appeals listed in Exhibit F on the sole issue of "whether the calculation of the Provider's Medicare Fractions was determined correctly in *CMS transmittals 12747 and 12785* ([Exhibit A]) for the fiscal years at issue. The Provider and fiscal years are identified in the Schedule of Cases referenced in section IV. The Provider contends that the Medicare Part C days that CMS included in the Medicare Fractions' denominators should be excluded from those Medicare Fractions, and the patient days for individuals eligible for both Medicare and SSI that were excluded from the Medicare Fractions' numerators should be included. Provider further contends that CMS did not follow its own

purported interpretation of the phrase *"entitled to benefits"* with regard to the Medicare statute when including Medicare Part C days in the denominator of the Medicare Fraction and excluding individuals from the numerator of the Medicare Fraction who were *entitled* to SSI but were not assigned payment status codes C01, M01 or M02 by the Social Security Administration (SSA)." *See* Exhibit B (emphasis added).

35. On March 20, 2025, Federal Specialized Services ("FSS"), as representative for the MAC, filed a response to the Hospitals' EJR request, concluding with the MAC's intention to subsequently "file a consolidated jurisdictional challenge with respect to each of the cases listed [in Exhibit F]" (response to EJR request attached hereto as **Exhibit** "**G**").

36. On April 1, 2025, FSS filed a jurisdictional challenge on behalf of the MAC, specifically stating that the Board should dismiss the appeals listed in Exhibit F "…because Transmittals 12747 and 12785 are not appealable final determinations for purposes of 42 U.S.C. § 1395oo(a)(1)(A)(ii) and 42 C.F.R. § 1835(a). Accordingly, the Providers' appeals are premature pending the issuance NPR/RNPRs using the recalculated SSI ratios that were announced and posted in the transmittals" (MAC's jurisdictional challenge narrative, list of exhibits, and exhibits C-1 thru C-7 attached hereto as **Exhibits** "**H**", "**I**", "**J**").

37. On April 3, 2025, the Board issued its final decision on the Hospitals' request for EJR, stating that "[i]n this case, the [Plaintiffs] in these groups have not yet received NPRs and have based their appeals on their dissatisfaction with Medicare/SSI Fraction data that was published on the CMS website in conjunction with [Exhibit A], pursuant to 42 U.S.C. §1395oo(a)(1)(A)(ii). However, the publication of Medicare/SSI Fraction data in conjunction with the Transmittals is not a 'final determination' from which a provider may appeal. Therefore, as the

[Plaintiffs] have failed to meet the jurisdictional requirements for a hearing, the Board denies their requests for EJR and dismisses their appeals." *See* Exhibit E.

38. In its April 3, 2025 final decision, the Board asserted that Exhibit A along with concurrently published Medicare/SSI Fraction data does not constitute a "final determination" based on its opinion that the decision in *Memorial Hospital v. Becerra* 2022 WL 888190 (D.D.C. Mar. 25, 2022) is "better-reasoned" and "provides a more thoughtful analysis" when compared to the decisions in *Battle Creek Health Sys. v. Becerra*, 2023 WL 7156125 (D.D.C. Oct. 31, 2023), *appeal docketed*, No. 23-5310 (D.C. Cir. Dec. 29, 2023) and *Baylor All Saints Med. Ctr. v. Becerra*, 745 F.Supp.3d 464 (N.D. Tex. Aug. 15, 2024), *appeal docketed*, No. 24-10934 (5th Cir. Oct. 14, 2024). The Board also claimed that even if it were to accept the Hospitals' argument that the published Medicare/SSI Fraction data in conjunction with Exhibit A are "final appealable determinations," it would still dismiss the majority of the appeals listed in Exhibit F "because such appeal requests would be untimely." *See* Exhibit E. The Board stated that "… CMS Transmittal 12747 was originally issued on July 26, 2024, and a large majority of the Providers filed their appeals between February 4 - 5, 2025, nearly two weeks after the 180-day period had expired, if calculated from that date. Even if such Providers were to argue that the appeals were timely based on the later issuance of Transmittal 12785 on August 13, 2024, this Transmittal bears no connection to the issue under appeal as the Transmittal merely implements a formatting change to the SSI Fraction data that was previously made available through the earlier Transmittal 12747 so that the SSI Ratio column is consistently rounded to four decimals in all files." *See* Exhibit E. The Hospitals contend that *all* of the subject appeals were timely, and contend that the Board's usage of the former of the two transmittals' publication dates for gauging the time in which to appeal further exemplifies the

arbitrary and capricious nature of the decision by the Board to dismiss the appeals listed in Exhibit F and Exhibit B.

## Count I

### Judicial Review Under the Medicare Act and the APA
### (The Board's Actions are Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)

39. The Hospitals incorporate by reference all preceding paragraphs of this Complaint.

40. The APA prohibits agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. §706(2)(A), or that is "unsupported by substantial evidence," *id.* §706(2)(E).

41. The Board's dismissal of the appeals listed in Exhibit F and Exhibit B was arbitrary and capricious, an abuse of discretion, and otherwise contrary to the Medicare Act.

## Count II

### Judicial Review under 42 U.S.C. § 1395oo(f)(1), 28 U.S.C. § 1331 and the APA
### (CMS's Determination was Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)

42. The Hospitals incorporate by reference all preceding paragraphs of this Complaint.

43. CMS's transmittals 12747 and 12785 are each a final determination within the meaning of 42 U.S.C. § 1395oo(a)(1)(A)(ii) for which the Hospitals are entitled to EJR pursuant to 42 U.S.C. § 1395oo(f)(1) because the Board has jurisdiction over the Hospitals' appeals, and it does not have the authority to declare invalid transmittals 12747 and 12785.

44. Alternatively, if transmittals 12747 and 12785 are not each a final determination within the meaning of 42 U.S.C. § 1395oo(a)(1)(A)(ii), they are final determinations for which there is no administrative appeal. Therefore, this Court has jurisdiction to hear the Hospitals' appeal of this final determination. *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986).

45. The APA prohibits agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. §706(2)(A), or that is "unsupported by substantial evidence," id. §706(2)(E).

46. CMS's issuance of transmittals based on a rule that is contrary to law, which bound CMS, was arbitrary and capricious, an abuse of discretion, and contrary to the Medicare Act.

## REQUEST FOR RELIEF

For these reasons, the Hospitals respectfully request that this Court enter an order:

a. For the sake of judicial expediency, granting Judicial Review and a stay of such Judicial Review pending the Supreme Court's decision in decision in *Advocate Christ Medical Center, et al. v. Becerra,* No. 22-5214 (U.S. 2023).

b. Alternatively, reversing the Board's dismissal of the Hospitals' appeals listed in Exhibit F.

c. Following the reinstatement of the Hospitals' appeals listed in Exhibit F, directing the Secretary to direct the Board to reverse its decision in Exhibit E and grant EJR based on Exhibits B, C, and D that were submitted by QRS on behalf of the Hospitals.

d. Subsequently, granting a stay of the Judicial Review pending the Supreme Court's decision in decision in *Advocate Christ Medical Center, et al. v. Becerra,* No. 22-5214 (U.S. 2023).

e. Awarding the Hospitals' costs and reasonable attorneys' fees, and for interest and such other and further relief that the Court deems appropriate.

Dated: April 17, 2025   Respectfully submitted,

/s/ Alan J. Sedley
Alan J. Sedley, Esq. Bar No. OH0017
ALAN J. SEDLEY LAW CORP.
18880 Douglas, Suite 417
Irvine, CA 92612
Tel: (818) 601-0098
*Attorney for the Hospitals*